**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\*\*\***

TPOV ENTERPRISES 16, LLC,

              Plaintiff,

vs.

PARIS LAS VEGAS OPERATING COMPANY, LLC,

              Defendant.

And all related matters.

2:17-cv-00346-JCM-VCF

**ORDER**

MOTION TO COMPEL [ECF NO. 69], MOTION TO QUASH [ECF NO. 71], AND MOTION TO SEAL [ECF NO. 77]

Before the Court are Plaintiff TPOV Enterprise 16, LLC's ("TPOV 16") Motion to Compel Responses to Subpoenas Duces Tecum (ECF No. 69), nonparties Trisha and Markita Thompson's Motion to Quash Deposition Subpoenas or for Protective Order (ECF No. 71), and Defendant Paris Las Vegas Operating Company's ("Paris") Motion to Redact Portions of its Response to Plaintiff's Motion to Compel Responses to Subpoena Duces Tecum and Seal Exhibits Thereto (ECF No. 77). For the following reasons, the Court grants the motion to compel and motion to quash in part and grants the motion to seal.

**BACKGROUND**

In 2011, TPOV and its then principal, Rowan Siebel, contracted with Paris to develop a steakhouse in the Paris Las Vegas hotel. (ECF No. 69 at 2). The contract gave Paris the right to terminate the contract if TPOV associated with unsuitable persons. (ECF No. 71 at 3). TPOV subsequently assigned all of its direct interests in the Steakhouse to TPOV 16 and Siebel assigned his shares to The Siebel Family 2016 Trust. (ECF No. 69 at 3-4). In September 2016, Paris terminated the contract. (ECF No. 69 at 3; ECF No. 71 at 4). Paris determined TPOV 16 and The Siebel Family 2016 Trust are "unsuitable" because of their affiliation with Siebel, who was convicted of tax fraud in 2016. (ECF No. 69 at 3-4; ECF No. 71 at

3-4;). TPOV 16 claims Paris breached the contract and violated the implied covenant of good fair and fair dealing. (ECF No. 69 at 5).

As part of its initial disclosures, Paris disclosed emails involving Thomas Jenkin, the global president of the Caesars Entertainment family of companies (of which Paris is a subsidiary), and his mother-in-law and wife, Markita and Trisha Thompson (neither of which is a party in this case). (*Id.* at 5-6; ECF No. 71 at 2-5). On August 21, 2016, Markita sent two emails to Trisha, CC'ing Jenkin. (ECF Nos. 70-9, 70-10). Both emails attached the same news article about Seibel's conviction. (*Id.*). The first email stated, "Please let me know what you think about this Bloomberg article and I promise to delete it after reading 'your take' on it." (ECF No. 70-9). No response has been produced to this first email. The second email from Markita again asks what Trisha and Jenkin think about the news article. (ECF No. 70-10). Trisha responded to the second email, "We sent that to you." (*Id.*).

On January 16, 2018, TPOV 16 served subpoenas duces tecum on Markita and Trisha Thompson. (ECF Nos. 70-11, 70-12). The subpoenas direct the Thompsons to produce emails and texts with or referring to Seibel from January 1, 2011 to the present "including such e-mails and/or text messages that may or have been previously deleted." (*Id.*). At the noticed depositions, the Thompsons were to testify as to "[m]eetings and other communications with Rowen Seibel and parties to this action concerning the facts alleged in the Complaint" such as the termination of the contract. (*Id.*). The August 21, 2016 emails are attached to the subpoenas. (*Id.*). The Thompsons objected to the subpoenas on various grounds, and represented that are not in possession of documents that are responsive to the subpoena. (ECF No. 69 at 7-8; ECF No. 70-11; ECF No. 70-12; ECF No. 71 at 6-8).

TPOV 16 now moves to compel the Thompsons to comply with the subpoenas, while the Thompsons move to quash the subpoenas. (ECF No. 69; ECF No. 71). TPOV 16 argues that the emails raise concerns regarding spoliation and the Thompsons may have relevant information due to

> (1) the Thompsons' intimate knowledge of the transactions related to and arising from the TPOV Agreement, (2) the Thompsons' multiple personal

interactions with Seibel, (3) the Thompsons' unique access to and potential influence over Paris's internal decision makers, and (4) the crucial relevance of documents that were or are in the Thompsons' possession that may have been subject to spoliation.

(ECF No. 69 at 8-11). TPOV 16 also asserts that the information sought is not unduly burdensome and is not entirely subject to the marital communications privilege. (*Id.* at 11-14). The Thompsons' argue that spoliation is not an issue because they are not parties to this action, they have no relevant information regarding this case, and Trisha can claim the marital privilege. (ECF No. 71 at 6-7, 9-12).

Paris moves to redact and seal exhibits to the response to TPOV 16's motion to compel. (ECF No. 77). Paris asserts that portions of the motion and Exhibits 1 and 2 contain "confidential, non-public information." (*Id.* at 2).

## MOTION TO SEAL

"Courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal citations and quotations omitted). The Ninth Circuit begins with "a strong presumption in favor of access." *Id.* However, the public's right to access is "not absolute." *Id.* Federal Rule of Civil Procedure 26(c) allows the Court to issue a protective order to govern discovery, as necessary to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense."

Paris seeks to redact portions of ECF No. 75 and seal ECF Nos. 76, 76-1, and 76-2. (ECF No. 77). Paris asserts that portions of the motion and Exhibits 1 and 2 contain "confidential, non-public information." (*Id.* at 2). TPOV 16 did not file a response to Paris's motion. Under LR 7-2(d), TPOV 16 has consented to the motion.

After reviewing ECF Nos. 76, 76-1, and 76-2, the Court agrees that they include confidential, non-public communications regarding Paris' internal procedures and the Nevada Gaming Board. Therefore, the Court will allow ECF Nos. 76, 76-1, and 76-2 to remain under seal. The redactions in ECF No. 75 are

1  limited to quotations of two confidential communications. Sealing the documents will protect confidential

2  information without denying the public access to court documents unnecessarily.

3  **MOTIONS TO COMPEL AND QUASH**

4  Federal Rule of Civil Procedure 26(b)(1) states that, "Parties may obtain discovery regarding any

5  nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the

6  case." If a party objects to an interrogatory, the opposing party can seek a motion to compel a discovery

7  response from the court. Fed. R. Civ. P. 37(a)(3)(B)(iii). "A party or any person from whom discovery

8  is sought may move for a protective order… The court may, for good cause, issue an order to protect a

9  party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ.

10  P. 26(c)(1).

11  TPOV 16 argues that the Thompsons may have relevant information and documents regarding (1)

12  spoliation and (2) TPOV 16's claims against Paris. The Court will evaluate these arguments separately.

13  The August 21, 2016 emails do not "raise[] the specter of potential spoliation" in this case. (ECF

14  No. 69 at 6). Individuals[1] "engage in spoliation of documents as a matter of law only if they had 'some

15  notice that the documents were potentially relevant' to the litigation before they were destroyed." *United*

16  *States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (quoting *Akiona v. United States*,

17  938 F.2d 158, 161 (9th Cir. 1991)). The emails were written before the contract between TPOV 16 and

18  Paris was terminated and more than five months before this case was filed. Markita would have had no

19  notice that the emails would have been relevant to any case at the time she wrote that she would delete

20  them. In addition, there has been no evidence that any email was actually deleted. The evidence seems

21  to indicate otherwise—Markita wrote a second email the same day as the first one, stating that she could

22

23

24  [1] Non-parties may have the duty to preserve evidence under special circumstances. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 371 (9th Cir. 1992); *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1106 (D. Ariz. 2014). The Court will not rule on whether any such circumstances existed in this case, because the Court finds that other factors weigh against a

25  finding of spoliation.

4

not remember if she had already sent the article to Trisha and Jenkin. (ECF No. 70-10). If she had received a response to the first email, it is unlikely that she would have written a second email.

However, the Court acknowledges the possibility that emails within the chains sent on August 21, 2016 may have been deleted or misplaced. These emails would be relevant to complete the conversation that Paris has already disclosed. The Thompsons have indicated that they do not have any further emails relating to these chains (ECF Nos. 71-1, 71-2), but they do not state what steps they took to search for this information. As the August 21, 2016 emails were sent to Jenkin and were originally produced by Paris, the Court finds it would also be efficient for Paris to perform a further search, or explanation of its previous search, on this limited issue. Therefore, the Thompsons and Paris will have until February 28, 2019 to search for any other emails that were part of the August 21, 2016 chains and provide to TPOV 16 (1) any newly discovered emails or (2) a statement describing the steps taken to search for the emails and a declaration that none were found.

Aside from any deleted emails that were part of the August 21, 2016 chains, TPOV 16 has failed to demonstrate that the Thompsons[2] have any relevant information regarding TPOV 16's claims against Paris. The emails themselves do not show that the Thompsons had any knowledge of Paris' attitude towards Seibel or any influence over Paris' decision to terminate the contract. As the record now stands, Markita asked for Trisha and Jenkin's "take" on Seibel's conviction, but received no substantive response. Markita did not give any opinion other than to say Seibel was "nice" (ECF No. 70-9), and Trisha gave no opinion at all. Though TPOV 16 asserts that the Thompsons have "intimate knowledge of the transactions related to and arising from the TPOV Agreement" and "unique access to and potential influence over Paris's internal decision makers" (ECF No. 69 at 11), there is no indication that Markita and Trisha have a closer relationship to the business decision in this case than any family member of an executive would have. Allowing TPOV 16 to depose the Thompsons merely because of their familial relationship to Jenkin

---

[2] With regard to Trisha, TPOV 16 has failed to show she has relevant knowledge that would not be subject to the marital privilege.

5

would not be proportional to the needs of the case, especially considering that any conversations they had with Paris employees regarding Seibel could likely be obtained from Paris. Therefore, except as to the search for emails as detailed above, TPOV 16's subpoenas of the Thompsons are hereby quashed.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that TPOV 16's Motion to Compel Responses to Subpoenas Duces Tecum (ECF No. 69) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED THAT Trisha and Markita Thompson's Motion to Quash Deposition Subpoenas or for Protective Order (ECF No. 71) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED THAT the Thompsons and Paris have until February 28, 2019 to search for any other emails that were part of the August 21, 2016 chains and provide to TPOV 16 (1) any newly discovered emails or (2) a statement describing the steps taken to search for the emails and a declaration that none were found. In all other respects, TPOV 16's subpoenas of the Thompsons are hereby quashed.

IT IS FURTHER ORDERED that Paris's Motion to Redact Portions of its Response to Plaintiff's Motion to Compel Responses to Subpoena Duces Tecum and Seal Exhibits Thereto (ECF No. 77) is GRANTED.

DATED this 29th day of January, 2019.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE