# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\*\*\*

TPOV ENTERPRISES 16, LLC,

      Plaintiff,

vs.

PARIS LAS VEGAS OPERATING COMPANY, LLC,

      Defendant.

PARIS LAS VEGAS OPERATING COMPANY, LLC, a Nevada limited liability company,

      Counterclaimant.

vs.

TPOV ENTERPRISES, LLC, a Delaware Limited Liability Company, TPOV ENTERPRISES 16, LLC, a Delaware Limited Liability Company, ROWEN SEIBEL, an individual.

      Counterclaim/Third-Party Defendants.

2:17-cv-00346-JCM-VCF

**REPORT AND RECOMMENDATION**

**And**

**ORDER**

Motion for Terminating Sanctions [ECF No. 152]; Sealed Motion for Terminating Sanctions [ECF No. 153]; Cross Motion for Sanctions [ECF No. 159]; Motion to Compel [ECF No. 170]; Cross Motion for Sanctions [ECF No. 172]

Before the Court are defendant and counterclaimant Paris Las Vegas Operating Company's ("Paris") motion for terminating sanctions (ECF No. 152); sealed motion for terminating sanctions (ECF No. 153); and motion to compel (ECF No. 170). Also before the Court are plaintiff and counterclaim defendant's (TPOV Enterprises 16, LLC ("TPOV 16")) and third-party defendants' (TPOV Enterprises, LLC ("TPOV") and Rowen Seibel ("Seibel")) (collectively, "TPOV Parties") cross motions for

sanctions. (ECF Nos. 159 and 172). The Court recommends that Paris's motions for terminating sanctions be granted in part. (ECF Nos. 152 and 153). The Court denies Paris's motion to compel (ECF No. 170). The Court denies the TPOV Parties' cross-motions for sanctions (ECF Nos. 159 and 172).

## I. Background

This is a breach of contract case involving a restaurant in the Paris Hotel & Casino in Las Vegas. TPOV 16 alleges Paris breached a contract with TPOV 16 when it terminated the contract and continues to operate Gordon Ramsay Steak. (ECF No. 1). Paris filed breach of contract counterclaims against TPOV 16, TPOV, and Seibel, alleging that third party defendant Rowan Siebel concealed material facts from Paris related to felonies he committed. (ECF No. 33 at 22).

This Court previously ordered sanctions against the TPOV Parties regarding canceled depositions which the Court found were, "completely unjustified." (ECF No. 125 at 2). As sanctions, this Court ordered that the depositions of TPOV and TPOV 16's 30(b)(6) witnesses take place in Las Vegas and deemed these facts established:

    a.  Neither Seibel nor the TPOV Parties informed Paris of Seibel's criminal activities after entering into the TPOV Agreement.

    b.  TPOV had an obligation in accordance with Section 10.2 of the TPOV Development Agreement to disclose activities related to Seibel's guilty pleas.

    c.  Seibel did not update his disclosures as required under Section 10.2 of the TPOV Development Agreement.

(*Id*. at 2).

On February 10, 2020, the Court held a hearing on several motions, including the above captioned motions. (ECF No. 186).

*//*

### a.     Paris's Motion for Sanctions and TPOV's Cross Motion for Sanctions

At the hearing, Paris argued in support of its motion for terminating sanctions that TPOV 16 and TPOV's Rule 30(b)(6) designee Green effectively failed to appear for his depositions because he was unprepared to testify during the depositions. Paris also argued that the TPOV parties attempted to use a privileged document during a deposition in violation of the protective order, and that Seibel secretly joined the conference line during the deposition of a Caesars' executive in violation of the protective order. Paris also argued that Seibel disparaged Caesars executives (and Paris's counsel) in his deposition.  Paris also argued that the TPOV Parties' counsel used documents in its depositions that it had not previously produced and that the TPOV Parties' objections "coached" their witness. Paris argued that the TPOV parties have engaged in a pattern of abuse, and that terminating sanctions are appropriate in this case.

At the hearing, the TPOV Parties argued in support of its cross motions for sanctions that Paris did not meet and confer regarding the motions for terminating sanctions, and that Green did not immediately know the answers to all of Paris's questions. The TPOV Parties offered to have Green fill in the blanks in the deposition transcript. The TPOV Parties also argued that Paris clawed-back the privileged document the day before one of the depositions, and that the document had been mistakenly marked as an exhibit at the depositions. The TPOV Parties argued that Paris's "coaching" argument is regarding a single exchange where TPOV objected regarding a document. The TPOV Parties also argued that the unproduced documents were the witness's own flight itinerary and a publicly available newspaper article. The TPOV Parties also argued that Seibel's call in to the deposition was not secret because the TPOV Parties' counsel, Steven Bennet, told Paris that his client would participate by telephone, that Seibel called in late and he did not want to interrupt the deposition by introducing himself, and that there would have been an audible beep when Seibel called in. (ECF No. 184-18 at 4). The TPOV Parties also argue that Paris's counsel pursued the line of questions that caused Seibel to

make "disparaging statements." The TPOV Parties asked the Court for sanctions for having to respond to this motion.

Paris argued in rebuttal that no meet and confer is required because this is a motion for sanctions. Paris argued that the TPOV Parties' discovery violations are not accidental and that the TPOV Parties have engaged in misconduct in bad faith, as evidenced by the pattern of misconduct.

### b. Paris's Motion to Compel and TPOV's Cross Motion for Sanctions

At the hearing, the parties rested their arguments regarding the Paris's motion to compel on the briefing. Paris argues in its motion to compel that Seibel is holding back documents that it argues are not protected by attorney client privilege. (ECF No. 170 at 2). Paris argues it is entitled to emails between Green, Seibel, and Seibel's criminal defense attorney, Michael Sardar. (*Id*. at 4). Paris also argues that Green waived privilege during his deposition because he testified that he did not work for Seibel "personally" (he worked for the TPOV entities) and he did not have an attorney client relationship with Sardar.

At the hearing, the TPOV Parties raised some of their arguments regarding their motions for sanctions, but the parties primarily rested their arguments regarding the TPOV parties' motions for sanctions on the briefing. The TPOV Parties argue in its response/cross motion for sanctions that Paris misconstrues Green's testimony because he was testifying about his early relationship with Seibel, and that Green acted as a personal assistant and agent for Seibel in May-July 2016, after Seibel had pled guilty to his tax-related criminal charges and his team was preparing submissions regarding his sentencing. (ECF No. 171 at 3). TPOV also argues that Green testified in the deposition that he frequently performed work personally for Seibel, such as when he assisted Seibel in finalizing his mortgage. (*Id.* at 5). TPOV asks for sanctions for having to respond to this motion. (ECF Nos. 172 and 176). Paris argues in its reply to its motion to compel/response to the motion for sanctions that Green was not a representative for Seibel for the purposes of attorney client privilege because Green worked

for the companies, not Seibel. (ECF No. 174). Paris argues that sanctions against it are not warranted because it is substantially justified in seeking this discovery. (ECF Nos. 174 at 5 and 175 at 5).

## II. Discussion

### a. Paris's Motion for Case Terminating Sanctions

Under its inherent power, a court may assess attorney's fees or other sanctions for the willful disobedience of a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). A court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43.

To determine whether case dispositive sanctions are warranted, the Ninth Circuit looks to a five-part test: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. This "test" is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (quotations omitted). "Only 'willfulness, bad faith, and fault' justify terminating sanctions." *Id.* When a court order is violated, "the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault warranting default.*" Stars' Desert Inn Hotel & Country Club Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997).

Rule 30(b)(6) provides that, "[t]he named organization must [ ] designate one or more officers…who consent to testify on its behalf." *Lagunas-Salazar v. Summerlin*, 2014 WL 347580, at 2 (D. Nev. Jan. 29, 2014) (quotation omitted). "The persons . . . designate[d] must testify about information known or reasonably available to [the company]." *Id.* "This provision imposes a duty on the corporation to educate its designee." *Lagunas-Salazar*, 2014 WL 347580, at 2 (citing 8A Wright & Miller, Federal Practice & Procedure: Civil § 2103 (3d Ed)) (emphasis added). Rule 30(c)(2) states that, "[a]n objection at the time of the examination…must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. Rules Civ. Proc. R. 30.

Pursuant to Paragraph 12 of the Stipulated Protective Order, "any violation of this Protective Order may result in the imposition of such sanctions as the Court deems proper." (ECF No. 29, 8:4-5.) Under Paragraph 28 of the Stipulated Protective Order:

> [U]nauthorized use and/or disclosure of Confidential Information and/or Highly Confidential Information beyond this litigation shall subject the offending party or nonparty to sanctions…including entry of judgment against the offending party

Paris claims that the TPOV Parties have made multiple discovery violations in bad faith and as part of a pattern, while the TPOV Parties claim that it has complied with discovery in good faith and that any perceived violations were unintentional.

### i. Documents at Depositions, Coaching, and Green's Deposition Testimony

The TPOV Parties argued that the introduction of the privileged document at two of the depositions was a mistake because Paris clawed back the document the day before one of the depositions. Paris argued at the hearing that it is true that it clawed back the document the day before one of the scheduled depositions, but that particular deposition did not go forward, which means the TPOV Parties had time to review their marked exhibits before the two depositions, but did not. Paris also argued that the TPOV Parties acted knowingly because the TPOV Parties' counsel disputed the claw back in the deposition and paraphrased the privileged document into the deposition record. Paris

also argued that the TPOV Parties introduced unproduced documents into the depositions (i.e. documents that the TPOV Parties did not disclose in its initial disclosures pursuant to Rule 26, its responses to written discovery, or in any initial disclosure supplement). The TPOV Parties argued at the hearing that the introduction of the undisclosed documents was harmless because the documents were publicly available, and one document was the witness's own flight itinerary.

The Court finds that the introduction of the privileged document in the two depositions in violation of the protective order and the introduction of the undisclosed documents in violation of Rule 26 are evidence of a pattern of discovery violations. The Court also finds that the TPOV Parties' Counsel lodged multiple inappropriate, suggestive, and argumentative objections during multiple depositions, including but not limited to the TPOV deposition of Green, that do not comply with the requirements of Rule 30(c)(2). For example, Brooks's objection in Green's TPOV deposition ("He didn't say that. You're mischaracterizing hat he said." See ECF 184-10 at 9) is suggestive and Brooks's objections in Seibel's deposition "Objection. Objection. You're assuming this is breach and you're not taking into account the amendment – the letter agreement in 2014 which specifically says he can assign all of his duties. So when you say 'breach'[.]" See ECF No. 155-10 at 137) is argumentative. While coaching objections alone likely would not subject a party to case terminating sanctions, these examples of coaching by the TPOV Parties' counsel are further evidence of a pattern of discovery violations.

Green testified in his individual capacity and in his capacity as a representative of TPOV and TPOV 16 on September 4, 5, and 6, 2019 in Las Vegas. (ECF No. 158 at 5). The TPOV Parties conceded during the hearing that Green did not have the same firsthand knowledge regarding TPOV that he had for TPOV 16 because he did not work for TPOV until late 2012. At the hearing, the TPOV Parties also conceded that although Green is the sole manager for TPOV, there were multiple instances where he not only did not know the answers to questions, but he also testified that he did not know how he would find out the information Paris questioned him about. The TPOV Parties argued at the hearing

that Green looked up some of the information on his computer when he went back to his hotel room and filled in the answers later. The Court finds that Green's actions (reviewing TPOV documents after the deposition and filling in his answers later) show that Green did not testify truthfully when he testified that he did not know what documents he needed to review to refresh his recollection. The Court finds that Green's testimony did not comply with the requirements of Rule 30(b)(6) on behalf of the TPOV entity. The Court declines an award of sanctions regarding Green's testimony regarding the TPOV 16 entity because Green knew substantially more about the TPOV 16 entity and he testified about it.

The Court finds that Green effectively did not appear for the TPOV entity 30(b)(6) deposition because Green did not testify about information that was reasonably available. Green had a duty to educate himself about the TPOV entity given that he is the sole manager and he did not. The Court finds that Green's failure to testify at the TPOV deposition was willful and in bad faith. The Court finds that case dispositive sanctions are warranted against the TPOV entity because this is not the first time Green has failed to appear for a deposition. The Court has warned the TPOV Parties regarding the fact that there would be consequences if the TPOV Parties did not comply with this Court's order regarding discovery. The TPOV Parties' introduction of the privileged document and instances of suggestive and argumentative objections shows there is a pattern of misconduct.

The Court has expended resources regarding Green's failure to appear multiple times now and Green's lack of testimony interferes with the Court's need to manage its docket. Paris will be prejudiced if it must go to trial without Green's full and truthful testimony regarding the TPOV entity. Green's refusal to truthfully and fully testify regarding the TPOV entity, as the sole manager of TPOV, "threatens to interfere with the rightful decision of the case." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 n.14 (9th Cir. 2007), citing to *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (quoting *Adriana Intl. Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990)). This Court has previously warned and sanctioned the TPOV Parties, specifically

regarding the unjustified actions of Green, thus less drastic sanctions are unavailable because TPOV has engaged in a pattern of discovery violations. The TPOV Parties have not shown that Green's lack of testimony at the TPOV entity deposition was outside the control of TPOV. The Court recommends that TPOV's answer be stricken and default be entered against the TPOV entity only.

### ii. Seibel's Telephonic Appearance and his Deposition Testimony

Paris argues that it is entitled to case ending sanctions against Seibel because he violated the protective order when he secretly participated telephonically in the confidential deposition of Thomas Jenkin. Seibel's counsel, Steven Bennet, submitted a sworn declaration to the Court that stated that Bennet told Paris that his client would be joining the call. The TPOV Parties also argue that the parties present would have heard an audible beep when Seibel joined the call. The TPOV Parties argue that Seibel did not announce himself because he called in late and he did not want to interrupt the deposition. Paris argued at the hearing that there was no audible beep when Seibel joined the call. The Court could not question Bennet, the TPOV Parties' attorney at the deposition, regarding what he told Paris's counsel about Seibel joining the deposition by telephone or whether he heard an audible beep when Seibel joined because Bennet unexpectedly passed away. (See ECF No. 177 at 2). Because there is a question of fact regarding what Bennet told Paris's counsel and what he heard at the deposition, the Court declines making a finding that Seibel violated the protective order when he joined the call. The Court warns Seibel that there will be consequences, which may include terminating sanctions, if he does not comply with the terms of the protective order, this Court's orders, and discovery obligations in the future.

Paris concedes that the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged (See *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1188 (D. Nev. 2006), but Paris wishes for the Court to enter sanctions against Seibel regarding his allegedly defamatory statements in his deposition. Seibel's

statements about Paris's affiliations with other convicted felons are issues he raised in his lawsuit (ECF No. 1). Paris's attorney asked Seibel multiple questions in the deposition regarding his allegedly disparaging statements, which led Seibel to continue to give explanations regarding his assertions. (ECF No. 155-20 at 11-21). Paris's assertions that it is entitled to case ending sanctions against Seibel because Seibel made disparaging statements during the deposition are unjustified.

### b. Paris's Motion to Compel

Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." In an action invoking this Court's diversity jurisdiction over claims for which state law would supply the rule of decision, the forum's state law supplies the applicable elements of the attorney-client privilege. See *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987) (citing Fed. R. Evid. 501). Nevada has adopted the *Upjohn* test for applying the attorney-client privilege to confidential communications with corporate employees. The functional equivalent test extends *Upjohn* to agents. *Grand Canyon Skywalk Dev. LLC v. Cieslak*, No. 2:15-cv-01189-JAD-GWF, 2015 U.S. Dist. LEXIS 107457, at 38 (D. Nev. Aug. 13, 2015); See also *United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010).

Pursuant to NRS 49.095:

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications:
> 1. Between the client or the client's representative and the client's lawyer or the representative of the client's lawyer.
> 2. Between the client's lawyer and the lawyer's representative.
> 3. Made for the purpose of facilitating the rendition of professional legal services to the client, by the client or the client's lawyer to a lawyer representing another in a matter of common interest.

See NRS 49.095. A representative of a client under NRS 49.075, "means a person having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client." Each case must be evaluated to determine whether application of the privilege would further

the underlying purpose of the attorney-client privilege to encourage candid communications between client and counsel. *Upjohn*, 449 U.S. at 395. "[T]oo narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely." *Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2016 U.S. Dist. LEXIS 5422, at 7 (D. Nev. Jan. 14, 2016) (citing to *United States v. Graf*, 610 F.3d at 1158-59).

Federal Rule of Civil Procedure 26(b)(5) provides procedural guidance as to what must be included in a privilege log when a case is in federal court and a party withholds information on the basis that it is privileged. Fed. R. Civ. P. 26(b)(5) requires that a party expressly claim a privilege and describe the nature of the documents, communications or things not produced to enable the other parties to assess the applicability of the privilege.

The party asserting the privilege must make a prima facie showing that the privilege protects the information withheld. See *In re Grand Jury Investigation*, 974 F.2d 1068, 1070–71 (9th Cir.1992). "We have previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach." *Id.*, citing to *Dole v. Milonas,* 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989). Generally, the list of items that should be part of a privilege log are identified in *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) and *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989)."In *Dole*, the log identified (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *In re Grand Jury Investigation*, 974 F.2d at 1071. But see 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 2016.1 at 321-323 (3d ed. 2010) ("The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection.")

The TPOV Parties have met their burden to show that privilege protects the correspondence between Seibel, Green, and Seibel's criminal defense attorney given that the communications are regarding Seibel's criminal charges and his sentencing. The privilege log the TPOV Parties submitted to Paris in this case fulfills the conditions of (a), (b), (c), and (e). (ECF No. 170-3). The TPOV Parties' privilege log went beyond the *Dole* standard to provide information on the subject matter of each document. There is no waiver because Green did not disclose any privileged information during the deposition and Green's statements regarding his employment are not a waiver because he appears to have acted as an agent for Seibel. The purpose of the attorney-client privilege is to encourage candid- communications between the attorney and client. Seibel's crimes were tax related, and Green worked for Seibel, advised him about finances, and is familiar with Siebel's taxes. There is no reason to doubt that discussions about sentencing and criminal charges with Seibel's criminal defense attorney were communications to secure legal advice. The TPOV Parties have shown that Green acted as an agent for Seibel during the sentencing process. The Court denies Paris's motion to compel production of the communications with Seibel's criminal lawyer.

### c. The TPOV Parties' Cross Motions for Sanctions

"Rule 37 does not require the moving party to meet and confer with the opposing party prior to filing a motion for sanctions under Rule 37(b) or (c)." *Allstate Ins. Co. v. Nassiri*, No. 2:08-cv-00369-JCM-GWF, 2010 U.S. Dist. LEXIS 138220, at 11 (D. Nev. Dec. 16, 2010), citing to *Hoffman v. Construction Protective Services, Inc*., 541 F.3d 1175, 1179 (9th Cir. 2008); *Sille v. Parball Corporation*, 2010 U.S. Dist. LEXIS 69358, 2010 WL 2505625 (D. Nev. 2010) at 2 and *Dayton Valley Investors, LLC v. Union Pacific Railroad Co*., 2010 U.S. Dist. LEXIS 108232, 2010 WL 3829219 (D.Nev. 2010) at 2 (same). Pursuant to Rule 37(a)(5)(A)(iii), an award of attorney fees may not be awarded when such an award would be unjust.

Paris was not required to meet and confer with the TPOV Parties prior to filing a motion for

sanctions. The Court declines an award of fees to the TPOV Parties because the Court finds it would be unjust to award attorney's fees to the TPOV Parties at this time, given the Court's findings that the TPOV Parties have engaged in a pattern of discovery violations.

Accordingly,

IT IS RECOMMENDED that Paris's motion for terminating sanctions (ECF Nos. 152 and 153) be GRANTED IN PART:  TPOV Enterprises, LLC answer (ECF No. 40) should be stricken as to TPOV Enterprises, LLC only, and the Clerk should enter default against third party defendant TPOV Enterprises, LLC.

IT IS ORDERED that Paris's motion to compel (ECF No. 170) is DENIED.

IT IS FURTHER ORDERED that the TPOV Parties' cross motions for sanctions (ECF Nos. 159 and 172) are DENIED.

DATED this 19th day of February 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE